IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LINDA M. FIGLAR,

     Plaintiff,

v.                                      CIVIL ACTION NO. 1:23-CV-30
                                              (KLEEH)

SIMONTON WINDOWS & DOORS, INC.
AND KELLY DOE,

     Defendants.

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR LEAVE TO AMEND COMPLAINT [ECF NO. 24] AND HER
SUPPLEMENTAL FILINGS [ECF NOS. 29 AND 53]

Pending before the Court is a litany of successive motions from Plaintiff in purported response to each of Defendants' opposition briefs.  First, Plaintiff's original motion for leave to amend her complaint, ECF No. 24, seeks leave of court to identify a specific individual defendant in lieu of the Kelly Doe placeholder.  Notably, Plaintiff filed that motion on June 21, 2023, in compliance with the Court's Scheduling Order deadline of June 23, 2023.  ECF No. 16.  The parties fully briefed that motion.  Thereafter, Plaintiff filed her Supplemental Motion for Leave to Amend Complaint.  ECF No. 29.  In that submission, Plaintiff seeks to bolster her Count III "wrongful discharge" claim with reference to West Virginia Code § 16-1-1 as the substantial public policy basis of a <u>Harless</u> claim.  That motion has likewise been fully briefed, making the matters ripe for disposition.  The final installment of the trilogy of motions seeking to revise her

complaint rests in Plaintiff's Second Supplemental Memorandum to Her Motion for Leave to Amend Complaint.  ECF No. 53.  That proposed amended complaint has now also been fully briefed rendering all of the relief requested under Federal Rules of Civil Procedure 15 and 16 ripe for decision.  For the reasons that follow, the Court **DENIES** all of Plaintiff's motions and supplemental memoranda, specifically ECF Nos. 24, 29 and 53.

## I.   BACKGROUND

### A.   Factual History

This case relates to allegations of pregnancy discrimination and wrongful termination. On or about July 8, 2022, Plaintiff Linda M. Figlar ("Plaintiff") was terminated by Defendant Simonton Windows & Doors, Inc. ("Defendant Simonton"). ECF No. 1-1, Compl., ¶¶ 4, 14. While employed, Plaintiff became pregnant and was placed on pregnancy restrictions by her doctor, which consisted of "lifting no more than thirty pounds." Id. at ¶¶ 6-7. Plaintiff "obtained and provided to Defendants" the letter that stated the pregnancy restrictions. Id. at ¶ 7. Plaintiff alleges that, despite there being "positions within the production team that could have adhered to these restrictions, . . . Defendants forced Plaintiff Figlar to go on unpaid leave instead." Id. at ¶ 8.

Plaintiff returned to work following the birth of her son, and "she was placed in a different position than she'd been in before." Id. at ¶ 9. Plaintiff alleges that this position adhered

to her pregnancy restrictions and that the position was available prior to her going on unpaid leave. Id.

In May 2022, "Plaintiff Figlar missed some time from work because her infant son was sick and in the hospital." Id. at ¶ 10. Plaintiff alleges she made the Defendants aware of this and was given approval to be off work. Id. Between July 4, 2022, and July 5, 2022, Plaintiff was off work, which was "previously planned, requested, and approved." Id. at ¶ 11. In addition to these two days, Plaintiff called off work on July 6, 2022, because she needed an extra day off. Id. On July 8, 2022, Plaintiff was terminated even though she alleges "throughout the duration of her employment [] [she] had not received any disciplinary actions related to her attendance." Id. at ¶¶ 11-12.

**B.   Procedural History**

On March 22, 2023, Plaintiff filed her complaint in the Circuit Court of Ritchie County, West Virginia against Defendant Simonton and Kelly Doe, who is alleged to be an HR staff member employed by Defendant Simonton. Id. at ¶¶ 2-3. Plaintiff alleges three claims in her complaint against the Defendants: pregnancy discrimination in violation of the West Virginia Pregnant Workers' Fairness Act, W. Va. Code § 5-11B-1, et seq.; failure to provide accommodation in violation of the same statute; and "wrongful termination." ECF No. 1-1. On March 22, 2023, Defendants removed the action to the Northern District claiming diversity

jurisdiction under 28 U.S.C. § 1332. ECF No. 1, Notice of Removal, ¶¶ 2-6. On June 13, 2023, Plaintiff filed a motion for extended time for service upon Kelly Doe because Plaintiff was unable to obtain Kelly Doe's full name and address. ECF No. 21. The Court granted Plaintiff's motion on June 13, 2023. ECF No. 22. The Court entered its Scheduling Order on May 22, 2023. ECF No 16. Relevant here, that Order set June 23, 2023, as the deadline for any motions to amend the pleadings. Id.

On June 21, 2023, Plaintiff timely filed her original motion for leave to amend her complaint. ECF No. 24. In her motion, Plaintiff seeks leave to amend the Kelly Doe information to Kellie Gorrell, and she states this information was only obtained following the "Plaintiff's Motion to Extend Time for Service Upon Defendant, Kelly Doe." Id. at 2. Plaintiff attached the proposed amended complaint to that motion. The proposed amended complaint only substitutes a named defendant, Kellie Gorrell, for the Kelly Doe placeholder named in the original Complaint. ECF No. 24-1.

On July 5, 2023, Defendant Simonton filed a response in opposition to the motion to amend Plaintiff's complaint arguing that allowing Plaintiff to amend her complaint would be futile. ECF No. 26, Opposition to Amendment. Defendant Simonton argues it is futile because the West Virginia Pregnant Worker's Fairness Act ("PWFA") does not allow the Plaintiff to seek liability against those not expressly stated in the statute as a "covered entity."

4

Id. at 3. On July 12, 2023, Plaintiff replied in support of her motion to amend her complaint. ECF No. 26.

Thereafter, on August 8, 2023 – after Defendants' response to the still-pending motion to amend and beyond the Scheduling Order's deadline - Plaintiff filed a Supplemental Motion for Leave to Amend Complaint with a new proposed amended complaint. ECF No. 29. She argues in the supplemental motion that the new proposed amended complaint addresses Defendants' concerns in opposing the original motion for leave to amend. Defendants filed a response in opposition and Plaintiff has since replied. ECF Nos. 37 and 59. This second proposed amended complaint clarifies Count III's wrongful termination is "in violation of public policy", identifies West Virginia Code § 16-1-1 as the public policy of the State of West Virginia, and cites the familiar Harless exception to at-will employment. ECF No. 29-1.

Then, on December 15, 2023 – months after Defendants responded to the supplemental proposed amended complaint and after passage of the deadline to seek leave to amend pleadings – Plaintiff filed her Second Supplemental Memorandum to Her Motion for Leave to Amend Complaint. ECF No. 53. The proposed amended complaint attached to that filing takes a dramatically different tact from the prior two efforts. Specifically, Plaintiff now seeks to assert a claim under the West Virginia Human Rights Act, W. Va. Code § 5-11-1, for gender discrimination and failure to accommodate (Count I) against

both Defendants; a claim under the Pregnant Workers Fairness Act, W. Va. Code § 5-11B-1, against Defendant Simonton (Count II); a claim for failure to accommodate under the PWFA against Defendant Simonton (Count III); and, a Harless wrongful discharge claim against both Defendants allegedly rooted in W. Va. Code § 16-1-1, the Human Rights Act, and the PWFA.   ECF No. 53-1.   The second supplemental memorandum has been fully briefed as well, making all such issues ripe for decision.

## II.   APPLICABLE LAW

### A.   Leave to Amend Under Rule 15

Federal Rule of Civil Procedure 15 permits a plaintiff to amend a complaint "once as a matter of course" within either 21 days after serving the complaint, or "21 days after service of a responsive pleading or . . . a motion under Rule 12(b), (e), or (f), whichever is earlier."   Fed. R. Civ. P. 15(a)(1).   "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The decision to grant or deny a motion to amend is within the discretion of the Court. See Scott v. Fam. Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013). Nonetheless, the Supreme Court of the United States has set forth factors for courts to consider when applying Rule 15(a)(2). See Foman v. Davis, 371 U.S. 178, 182

(1962); Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). Courts should grant leave to amend unless the amendment (1) "would be prejudicial to the opposing party," (2) "there has been bad faith on the part of the moving party," or (3) "the amendment would have been futile." Johnson, 785 F.2d at 509 (citing Foman, 371 U.S. at 182).

First, prejudice to the opposing party can result when a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party. Id. at 510. Often, a finding of prejudice applies when the amendment is offered "shortly before or during trial." Id. (citing Roberts v. Ariz. Bd. of Regents, 661 F.2d 796, 798 (9th Cir. 1981) (citations omitted)).

The second factor is whether the party seeking to amend is doing so in bad faith. Bad faith amendments are "abusive" or "made in order to secure some ulterior tactical advantage." GSS Props., Inc. v. Kendale Shopping Ctr., Inc., 119 F.R.D. 379, 381 (M.D.N.C. Mar. 15, 1988) (citing 6 C. Wright & Miller, Federal Practice and Procedure, § 1487 (updated Apr. 2015))). In assessing this factor, the court may consider the movant's delay in seeking the amendment but delay alone "is an insufficient reason to deny the plaintiff's motion to amend." Hart v. Hanover Cnty. Sch. Bd., No. 11-1619, 495 Fed. App'x 314 (4th Cir. 2012) (citations omitted).

The third factor weighs against granting leave to amend when amending the complaint would be futile. Johnson, 785 F.2d at 509-10. Even in the absence of prejudice and bad faith, a court should still deny leave to amend when the amended complaint would not survive a motion to dismiss, Perkins v. U.S., 55 F.3d 910, 917 (4th Cir. 1995), or "when the proposed amendment is clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510.

Federal Rule of Civil Procedure 8(a) requires merely a "short and plain statement of the claim showing that the pleader is entitled to relief." See Burns v. AAF-McQuay, Inc., 980 F. Supp. 175, 179 (W.D. Va. Sept. 24, 1997) (noting that the proper standard of review when amendment is challenged on grounds of futility is whether the proposed amendment states a claim upon which relief can be granted). If the proposed amendment fails to plausibly assert a claim or relief cannot ultimately be granted, the amendment is futile.

**B.   Rule 16's Good Cause Standard**

Federal Rule of Civil Procedure 16(b)(4) provides that a Scheduling Order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Although leave to amend a complaint should be freely given when required under Rule 15(a), Rule 16(b)'s good cause standard must also be satisfied to justify leave to amend the pleadings after the deadlines provided by a scheduling order have passed. Nourison Rug Co. v. Parvizian, 535

F.3d 295, 298 (4th Cir. 2008); see also Smith v. United Parcel Serv., Inc., 902 F. Supp. 719, 721 (S.D.W. Va. 1995) ("Once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a).").

> "Good cause" requires the party seeking relief
> to show that the deadlines cannot reasonably
> be met despite the party's diligence, and
> whatever other factors are also considered,
> the good-cause standard will not be satisfied
> if the district court concludes that the party
> seeking relief (or that party's attorney) has
> not acted diligently in compliance with the
> schedule.

Cook v. Howard, 484 F. App'x 805, 815 (4th Cir. 2012) (quotation and alterations omitted). "Under Rule 16(b), good cause exists where the moving party has diligently made efforts to meet court imposed deadlines." Tawwaab v. Virginia Linen Serv., Inc., 729 F. Supp. 2d 757, 768 (D. Md. 2010) (citation omitted). "The factors to be considered in determining whether there is good cause or excusable neglect include the danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." Id. at 768-69 (internal quotations and citation omitted).

### III. <u>ANALYSIS</u>

Among other reasons, Defendants oppose all three proposed amended complaints arguing the amendments would be futile. Defendants also argue the two supplemental submissions are untimely under the Court's scheduling order. Ultimately, the Court agrees.  The first proposed amended complaint seeks to assert a claim against individual defendant Gorrell under the PWFA and a so-called "wrongful discharge" claim against her as well. Such an amendment would be futile for the reasons discussed <u>infra</u>.  The two supplemental submissions are untimely, and Plaintiff has failed to show good cause for why the tardy submissions should be considered.

### A.    Futile Amendment

In her original motion to amend, Plaintiff seeks to substitute Kelly Gorrell, a Human Resources professional working for Defendant Simonton.  Specifically, Plaintiff seeks to assert claims under the PWFA for discrimination and failure to accommodate against both Defendants and a "wrongful discharge" claim against both Defendants.  The Court will address each in turn.

### 1.    PWFA Claims Against Individuals

Plaintiff seeks leave to amend her complaint to assert claims in Counts I and II against proposed individual defendant Kelly Gorrell under the PWFA.  However, Plaintiff's claims under the PWFA only apply to "covered entities." W. Va. Code § 5-11B-2.

"Covered entities" has the same definition as "employer" under the West Virginia Human Rights Act. W. Va. Code § 5-11B-5(3). Therefore, "covered entities" are defined as "the state, or any political subdivision thereof, and any person employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year." W. Va. Code § 5-11-3(d).

In her proposed amended complaint, Plaintiff only alleges two facts specifically about Kellie Gorrell. First, Plaintiff states "Defendant Kellie Gorrell (herein referred to as 'Defendant Gorrell') is an adult individual, employed for Defendant Simonton in the Human Resources department." ECF No. 24, Motion to Amend, Exhibit A, ¶ 3. Second, Plaintiff states "on or about July 8, 2022, Defendant Simonton, through Defendant Gorrell, wrongfully, recklessly, carelessly, willfully, wantonly, and unlawfully terminated Plaintiff Figlar claiming she had missed too much time from work." Id. at ¶ 13. Based on what Plaintiff proposes, Kellie Gorrell, an individual, does not meet the definition of a covered entity according to W. Va. Code § 5-11-3(d). Having determined Kellie Gorrell is not a covered entity under the PWFA, Plaintiff is precluded by statute from suing Kellie Gorrell under the proposed theory. Therefore, allowing the Plaintiff to amend her

complaint would be futile because it would be insufficient to support a claim for relief against Kellie Gorrell under the PWFA.

### 2. "Wrongful Discharge"

In Count III of her proposed amended complaint, Plaintiff also seeks to bring a "wrongful discharge" claim against both Defendants. The claim, as pled, is not brought under any identified statute nor is it grounded in any alleged substantial public policy of the state of West Virginia. The sole fact alleged in support of this additional cause of action is as follows: "Based upon information and belief, Plaintiff's termination was at least in part based on her requesting accommodations due to her pregnancy and then requesting time off to care for her sick child. Plaintiff Figlar did not commit any separate dischargeable offense." ECF No. 24-1 at ¶30.

Even under the liberal standard of Rule 15 and, by extension, Rule 12, Plaintiff has not plausibly set forth a claim upon which relief could be granted — making the amendment futile and not appropriate here. Presumably,[1] Plaintiff seeks to add a <u>Harless</u> claim against Defendants contending her termination violates the substantial public policy of the state of West Virginia.

---

[1] The proposed amended pleading is silent as to the specific legal theory or cause of action Plaintiff advances in Count III. The Court bases its assumption largely on the two supplemental submissions where Plaintiff more clearly articulates her Count III claim. ECF Nos. 29 and 53.

"The determination whether a substantial public policy exists is a question of law for the court." Frohnapfel v. ArcelorMittal Weirton LLC, 100 F. Supp. 3d 556, 562-63 (N.D.W. Va. 2015) (Bailey, J.). Although courts may look to "established precepts in [the West Virginia] constitution, legislative enactments, legislatively approved regulations, and judicial opinions" in determining whether a substantial public policy exists, Birthisel v. Tri-Cities Health Servs. Corp., 424 S.E.2d 606, 612 (W. Va. 1992), Harless claims "are generally based on a public policy articulated by the legislature." Swears v. R.M. Roach & Sons, Inc., 696 S.E.2d 1, 5-6 (W. Va. 2010) (citing Shell v. Metro. Life Ins. Co., 396 S.E.2d 174, 180 (W. Va. 1990)). The public policy relied upon must not only exist — it must also be **substantial**. Feliciano v. 7-Eleven, Inc., 559 S.E.2d 713, 718 (W. Va. 2001). Additionally, "[i]nherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person": the public policy must provide fair notice as to what conduct is or is not prohibited. Kanagy v. Fiesta Salons, 541 S.E.2d 616, 620 (W. Va. 2000) (quoting Syl. pt. 3, Birthisel, 424 S.E.2d 606). Stated differently, "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." Birthisel, 424 S.E.2d 606.

The declaration of public policy is a step courts should not undertake lightly.  This Court is well-aware that "the West Virginia courts have proceeded with 'great caution' in applying public policy to wrongful discharge actions." Washington v. Union Carbide Corp., 870 F.2d 957, 962–63 (4th Cir. 1989).  The Fourth Circuit later reiterated "a state claim which has not been recognized by that jurisdiction's own courts constitutes a settled question of law, which will not be disturbed by this court absent the most compelling of circumstances." Tritle v. Crown Airways, 928 F.2d 81 (4th Cir. 1990).

Trial courts (particularly federal district courts) are thus to "proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject." Tiernan v. Charleston Area Med. Ctr., Inc., 506 S.E.2d 578, 584 (W. Va. 1998) (internal citations omitted).  The Supreme Court of Appeals of West Virginia has "exercised the power to declare an employer's conduct as contrary to public policy with restraint . . ., and [has] deferred to the West Virginia legislature because it has the primary responsibility for translating public policy into law." Shell v. Metro. Life Ins. Co., 396 S.E.2d 174, 180 (W. Va. 1990) (internal quotations and citations omitted).  Thus, "[i]t is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to

it, that a court may constitute itself the voice of the community so declaring." <u>Tiernan</u>, 506 S.E.2d at 584 (internal citations omitted).

As this Court has previously observed,

> [f]ederal courts in West Virginia have noted that the Supreme Court of Appeals has intentionally read <u>Harless</u> narrowly. <u>See Baisden v. CSC-PA, Inc.</u>, No. 2:08-cv-01375, 2010 WL 3910193, at *5 (S.D.W. Va. Oct. 1, 2010) (writing that "the West Virginia Supreme Court of Appeals ... has read Harless narrowly so as not to 'unlock a Pandora's box of litigation in the wrongful discharge arena' "); <u>see also</u> <u>Wiley v. Asplundh Tree Expert Co.</u>, 4 F.Supp.3d 840, 847 (S.D.W. Va. 2014) (stating that "[t]his Court has previously declined to recognize a new type of Harless claim ... because the West Virginia Supreme Court has interpreted Harless so narrowly"). The United States District Court for the Southern District of West Virginia, in finding that <u>Harless</u> claims do not extend to plaintiffs who are covered by collective bargaining agreements, wrote that "[a]ny expansion of the claim is best left to the West Virginia courts." <u>Fugate v. Frontier W. Va.</u>, Inc., No. 2:17-cv-00559, 2017 WL 3065216, at *2 (S.D.W. Va. July 19, 2017). Finally, it is important to note that "federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion." <u>St. Paul Fire & Marine Ins. Co. v. Jacobson</u>, 48 F.3d 778, 783 (4th Cir. 1995).

<u>Skelley v. FedEx Corp. Servs., Inc.</u>, No. 1:19-CV-2, 2019 WL 1937570, at *3 (N.D.W. Va. May 1, 2019). Moreover, it is incumbent upon a plaintiff to identify the source of the substantial public policy allegedly supporting a <u>Harless</u> cause of action. Given the skepticism trial courts must deploy in identifying **new** <u>Harless</u>

theories, the Court should not – and, here, will not – seek out that which Plaintiff herself failed to identify.

Plaintiff's proposed amended complaint is devoid of any constitutional precept, statute, regulation, or judicial decision that could otherwise arguably sustain a <u>Harless</u> claim.  Count III cites no legal authority, instead reasserting amorphous references to legal principles found in the PWFA (and already asserted in the original complaint) and other statutes such as the West Virginia Human Rights Act, W. Va. Code § 5-11-1, <u>et seq</u>.  This fails under the Rule 12 plausibility standard, thus making the proposed amendment, specifically Count III, futile.  Chief Judge Johnston of the Southern District of West Virginia summarized the issue appropriately:

> In order to determine whether Plaintiffs have shown that their <u>Harless</u> claim is plausible, they need to specify the source of legal authority that recognizes that a substantial West Virginia public policy is as a matter of law at stake in this case. With no such assertion, there is no way a court could evaluate the plausibility of the claim.

<u>Wiley</u>, 4 F. Supp. 3d at 845.

For these reasons, Plaintiff's Motion for Leave to Amend Complaint [ECF No. 24] is **DENIED**.

### B.   Untimely Supplemental Submissions

After timely filing the initial motion for leave to amend and after Defendants responded in opposition, Plaintiff filed two supplemental pleadings purportedly in support of the original

motion.  However,  each  of  these  supplements  attaches  a  revised proposed amended complaint "addressing" Defendants objections to the preceding proposed amended complaint.  Both will be treated as motions for leave to amend pleadings in light of the substantive changes  in  each,  which  makes  both  supplemental  submissions untimely under the Court's scheduling order.

Motions for leave to amend pleadings or to join parties were due on or before June 23, 2023. ECF No. 16.  The supplemental proposed amended complaints were filed on August 8, 2023, and December 15, 2023. ECF Nos. 29 and 53.  For either filing to be properly  before  the  Court  for  consideration,  Plaintiff  must demonstrate good cause.

Plaintiff  primarily  focuses  on  how  each  successive supplemental proposed amended complaint addresses or alleviates any "concerns" Defendants may have with the predecessor pleadings. Substantive  revisions  seeking  to  avoid  either  (1)  opposition  to the motion to amend on futility grounds or (2) a motion to dismiss for failing to plausibly state a claim for relief is not good cause justifying relief from the Court's deadlines.

Plaintiff also points to delays in prosecuting her claims and earnest  discovery  based  on  settlement  discussions.  However, neither supplemental brief sets forth sufficient good cause under Rule 16.  The information Plaintiff would require for the varying claims  detailed  in  the  supplemental  proposed  amended  complaints

was available to her at the time the original motion for leave to amend was filed.  In other words, no new evidence was revealed or discovered.  The successive filings are merely efforts to reformat the information into cognizable legal claims after Defendants revealed their position on the prior amendment.  The lack of new evidence or information only exacerbates both the prejudice to Defendants and the undue nature of the delay in Plaintiff's bait-and-switch efforts.  Specifically considering the Rule 16 factors, the Court cannot conclude that good cause exists, and the supplemental motions [ECF Nos. 29, 53] must also be **DENIED**.

### IV.   Conclusion

The Court therefore **DENIES** Plaintiff's motion to amend her complaint as the proposed amendment would be futile. ECF No. 24, Motion to Amend.  The Court **DENIES** the supplemental submissions as untimely because they were filed without good cause to excuse Plaintiff's failure to comply with the scheduling order.  ECF Nos. 29 and 53.

It is so **ORDERED**.

The Clerk shall transmit copies of this Order to counsel of record by electronic means.

Dated: February 1, 2024

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

18