IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LINDA M. FIGLAR,

    Plaintiff,

v.                                     CIVIL ACTION NO. 1:23-CV-30
                                                    (KLEEH)

SIMONTON WINDOWS & DOORS, INC.,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 71]

Pending before the Court is *Defendant Simonton Windows & Doors, Inc.'s Motion for Summary Judgment* [ECF No. 71]. For the following reasons, Defendant Simonton Windows & Doors, Inc.'s ("Defendant" or "Simonton") Motion for Summary Judgment is **GRANTED** and Plaintiff Linda M. Figlar's ("Plaintiff" or "Figlar") Complaint is **DISMISSED WITH PREJUDICE.**

### I.   RELEVANT PROCEDURAL HISTORY

On February 24, 2023, Plaintiff filed her Complaint in the Circuit Court of Ritchie County, West Virginia. ECF No. 1-1. Plaintiff alleged three claims in her Complaint: pregnancy discrimination in violation of the West Virginia Pregnant Workers' Fairness Act, W. Va. Code § 16B-19-1, et seq.[1]; failure to provide accommodation in violation of the same statute; and "wrongful termination." ECF No. 1-1. On March 22, 2023, Defendants Simonton

---

[1] The West Virginia Pregnant Workers' Fairness Act was previously cited as W. Va. Code § 5-11B-1, et seq.

Windows & Doors, Inc. and Kelly Doe removed the action to the Northern District of West Virginia claiming diversity jurisdiction under 28 U.S.C. § 1332. ECF No. 1, Notice of Removal, ¶¶ 2-6. On April 1, 2024, Plaintiff voluntarily moved to dismiss Count III of her Complaint and all claims against Kelly Doe. ECF No. 70, which the Court subsequently granted. ECF No. 118.

On April 5, 2024, Simonton filed *Defendant Simonton Windows & Doors, Inc.'s Motion for Summary Judgment* and supporting memorandum. ECF No. 71. Thereafter, Plaintiff responded in opposition to summary judgment [ECF No. 73] and Defendant filed its reply in support of summary judgment [ECF No. 77].

On May 19, 2024, Figlar filed *Plaintiff's Motion for Extension of Time to Complete Discovery* [ECF No. 79]. The next day, Plaintiff filed two motions to compel seeking written discovery responses and a Federal Rule of Civil Procedure 30(b)(6) deposition. ECF Nos. 81, 83. Additionally on May 20, 2024, Plaintiff sought leave to file a supplemental response in opposition to summary judgment. ECF No. 84. On May 30, 2024, the Court entered its *Memorandum Opinion and Order Denying Plaintiff's Motion for Extension of Time to Complete Discovery* [ECF No. 89], which additionally denied as moot Plaintiff's motions to compel.[2] On the same day, the Court

---

[2] On May 31, 2024, Plaintiff moved for the Court's reconsideration of its decision to deny re-opening discovery. ECF No. 91. Defendant responded in opposition to the motion for reconsideration. ECF No. 94. This Motion is presently pending with the Court.

granted in part and denied in part Plaintiff's Motion to file a supplemental response – allowing only supplementation of the summary judgment briefing with evidence obtained from Shelia Bowie's deposition, taken after Defendant moved for summary judgment. ECF No. 90. Figlar filed *Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment* [ECF No. 93] on June 7, 2024, and Simonton filed *Defendant's Supplemental Reply in Support of Summary Judgment* [ECF No. 95] on June 13, 2024. Accordingly, the subject motion for summary judgment has been fully briefed and is ripe for review.

## II.  <u>FACTUAL BACKGROUND</u>

Simonton is a manufacturer of vinyl windows and doors with a location in Richie County, West Virginia. *Mem. in Supp. Def.'s Mot. Summ. J.*, ECF No 71-1 at p. 2. Figlar was hired by Simonton in 2021. ECF No. 71-2 at pp. 43-47. Upon her hiring, Figlar received information on several policies and procedures, including the drug and alcohol policy, the code of ethics, the attendance policy, the harassment and workplace violence compliance policy, and the associate non-disclosure agreement. ECF No. 71-2 at pp. 43-46; *Figlar Dep.* at pp. 59-60. Plaintiff also received and reviewed Simonton's "Employee Handbook: A Guide to Employment at Cornerstone Building Brands." ECF No. 71-2 at p. 90; *Linda Figlar Dep.* at pp. 58:13-59:4. The employee handbook provided information on several topics including the attendance, time off, and anti-

3

discrimination policies. ECF No. 71-2 at p. 94.

Regarding medical documentation and privacy, the handbook provides:

> The company respects your right to privacy. Depending on the length of your absence, however, you may be asked to provide more information. Work with your Human Resources representative for your facility and make sure you're familiar with your responsibilities, If you believe the reason for the absence may cause you to miss multiple scheduled days of work, let your manager know and contact a Human Resources representative to discuss further.

ECF No. 71-2 at p. 114.

During Plaintiff's employment, Simonton utilized Voya Financial, a third-party administer, to manage employee requests for leave or accommodation. ECF No. 95-2, *Shelia Bowie Dep.* at p. 17:4-7. Employees seeking a request for leave pursuant to the Family Medical Leave Act ("FMLA"), Short-Term Disability, or another form of work-related accommodation go through the same process. Id. at pp. 20:7-19; 26:22-23. Employees are directed to Human Resources when they have questions regarding any sort of accommodation. Id. at p. 20:20-22. A member of the Human Resources Department then explains the process of applying for leave or accommodation through Voya. Id. at p. 17:4-7. Human Resources provides employees with documentation including Voya's contact information and website. Id. at p. 22:6-23.

The Human Resources Department does not make individual

4

determinations regarding requests for accommodations or leave. Id. at pp. 27:5-9; 49:15-18. Rather, once someone in Human Resources provides the information for Voya, the employee communicates directly with Voya. Id. at p. 29:17. Thus, any medical information or supporting documentation requested by Voya, must be sent to Voya. Id. at pp. 29:24-30:11. When determining whether a request for accommodation should be granted, Voya could contact Simonton as part of its review if it needed any information, such as available roles at the facilities. Id. at pp. 42:11-16; 46:20-22; 60:15-18. Simonton does not independently assess if a request for accommodation can be granted. Id. at p. 49:15-18.

While employed in 2021, Figlar primarily spent her time making larger windows from pre-built windows. *Figlar Dep.* at p. 28:14-16. As part of her employment, Figlar was required to lift more than 45 pounds and believed the job was labor intensive. Id. at p. 31:8-15. At times, Figlar lifted windows weighing more than 100 pounds. Id. at p. 11:14-17.

On July 7, 2021, Figlar discovered she was pregnant. ECF No. 73-1 at p. 6. The same day, Plaintiff informed her supervisor Daniel Delise that she was pregnant and had work restrictions. ECF No. 71-2 at p. 182. Because Plaintiff did not have any paperwork to substantiate any restrictions, she was sent home from work. Id. HR Manager Shelia Bowie was forwarded this information and asked to assist Figlar. Id.; ECF No. 71-2 at p. 65.

5

The next day on July 8, 2021, Plaintiff requested via WVU MyChart that Stephanie A. Hurst, Certified Nurse Midwife, provide a list of what she could and could not do while at work when pregnant. ECF No. 73-2 at p. 2. A Licensed Practical Nurse ("LPN"), Rikki Gordon, responded to the message and informed Plaintiff that they did not typically make restrictions for patients as early in their pregnancies as Figlar was at the time, but nonetheless asked Plaintiff what she did for work. Id. at p. 3. Plaintiff informed Gordon that she lifts up to 200-pound windows and works 12-hour shifts in a factory. Id. at p. 4. Based upon this conversation, Gordon, stated she would "put a letter in" for Figlar to access via MyChart. Id. at p. 5. Accordingly, LPN Gordon prepared and signed a one-sentence letter on July 8, 2021, stating:

> Linda M. Figlar is pregnant and is receiving her prenatal care with Obstetrics and Gynecology at the Bridgeport office, due to pregnancy, it is recommended that Linda lift no more than 30lbs at this time.

ECF No. 73-3. Figlar provided the note to Human Resources for Simonton. *Kellie Gorrell Dep.*, ECF No. 95-3 at pp. 44:22-45:9.

Thereafter, Bowie spoke with Figlar regarding the process for requesting leave or an accommodation. ECF No. 95-2 at p. 41:2-4. Bowie gave Figlar the contact information for Voya, along with the typical information Simonton provided to employees seeking leave or accommodation. Id. at p. 42:1-10. Immediately thereafter, Plaintiff filed a claim with Voya for short-term disability and

6

FMLA. *Figlar Dep.*, ECF No. 71-2 at p. 37:2-7. Plaintiff was also granted a temporary leave of absence to allow her to complete the process of seeking pregnancy-related leave or accommodation. Id. at p. 41:14-21; ECF No. 71-2 at 183. Voya and Simonton required certification of Figlar's need for leave or accommodation by July 31, 2021. ECF No. 71-2 at pp. 76-78. Voya sent Plaintiff paperwork in accordance with her requests. *Bowie Dep.* at p. 93:17-19.

Figlar's healthcare provider was given the Voya form, *Completing the FMLA or Leave of Absence Medical Certification Maternity or Parental* to provide medical certification. *Figlar Dep.*, ECF No. 73-13 at p. 4-13; see ECF No. 71-2 at pp. 80-84. In part, the form requested a healthcare provider "identify the job functions the employee is unable to perform and the nature of the work restrictions and the duration of such inability." ECF No. 71-2 at p. 81. The form also instructed for the completed document to returned "via fax to Voya Absence Resources at 1.877.309.0218 before the listed due date." Id.  at p. 80.

On July 13, 2021, Figlar sent a message through MyChart requesting her provider complete the Voya paperwork within the next fifteen days. ECF No. 93-7 at p. 6. In the message, Figlar indicated that she believed she was being put on leave and thought that was "fine." Id. LPN Gordon responded the same day indicating she would fill out the portions of the forms she could, but indicated that Figlar's provider was not putting her off work. Id.

at p. 7.

On July 15, 2021, Figlar received a letter from Voya indicating, in part, that her request for continuous leave from July 13, 2021 to February 4, 2022, pursuant to the West Virginia Pregnant Workers Fairness Act ("PWFA") was still pending because Voya needed medical certification. ECF No. 71-2 at p. 76. Accordingly, Figlar followed up with her prenatal care provider on July 20, 2021. On July 22, 2021, LPN Gordon confirmed that the office had received the Voya paperwork.

Neither Voya nor Simonton ever received the completed paperwork from Plaintiff or her medical provider. ECF No. 71-2 at pp. 69, 73. Accordingly, Voya did not request information from Simonton regarding available job positions. *Bowie Dep.* at pp. 43:5-15, 78:3-5. Additionally, Voya denied Figlar's request for leave pursuant to the WV PWFA, on August 2, 2021, because it did not receive the required documentation. ECF No. 71-2 at p. 73. Though Plaintiff contends that Midwife Hurst completed all the necessary paperwork for Voya [*Figlar Dep.* at p. 43:18-20], the record does not support this assertion. Rather, Plaintiff admits that she does not have a copy of the completed paperwork and never saw the completed paperwork. *Figlar Dep.* at p. 44:3-6, 18-20. The alleged submitted request for accommodation to Voya is not in the record before this Court.

On August 25, 2021, Figlar spoke with HR employee Kellie

Gorrell regarding the status of her employment. ECF No. 71-2 at p. 85. Plaintiff indicated that she did not want to proceed with short-term disability because she could not pay her bills on 60% of her income. Id. Further, Plaintiff believed she would not be permitted to continue working her second job for Door Dash if she received short-term disability benefits. ECF No. *Figlar Dep.* at p. 47:18-21. Gorrell gave Plaintiff another copy of the short-term disability information and explained that Plaintiff could medically resign from her position and reapply later. Id.; *Gorrell Dep.* at p. 82:10-20. Figlar ultimately decided to voluntarily resign, instead of continuing through the process with Voya. *Bowie Dep.* at p. 104:13; ECF No. 71-2 at p. 86. Plaintiff understood that she could not receive an accommodation from Simonton, through Voya, without completing the medical certification. ECF No. *Figlar Dep.* at pp. 47:22-48:1.

In May 2022, Plaintiff re-applied at Simonton and was rehired as a Production Associate 1. ECF No. 71-2 at p. 40; ECF No. 73-1 at 9-10. Figlar was assigned to a different role based on Simonton's needs at the time of her rehire. *Gorrell Dep.* at pp. 67:19-68:4; *Figlar Dep.* at p. 11:10-11. Additionally, Figlar's accrued vacation time reset upon her rehire. *Gorrell Dep.* at p. 94:1-5; *Bowie Dep.* at p. 104:18-21; ECF No. 71-2 at 115 ("Unused vacation, sick or PTO time is forfeited upon termination.").

New or rehired employees have a probationary period during

their first 90 days with Simonton. *Bowie Dep.* at p. 105:9-12; *Gorrell Dep.* at p. 16:7-10. Simonton explains the facility-specific attendance policy during employee orientation and provides employees with a printed copy of the presentation materials. *Gorrell Dep.* at pp. 91:17-92:5. Probationary employees are allowed three occurrences or unscheduled absences in their first 90-days of employment. *Bowie Dep.* at p. 105:6-12; *Gorrell Dep.* at p. 16:7-10. Employees receive an occurrence if they call off from work, without taking approved time off. *Gorrell Dep.* at pp. 54:1-15, 80:4-8. An employee is separated upon receiving a fourth occurrence or unscheduled absence in the probationary period. Id. at p. 80:4-8.

If an employee is granted vacation time, they do not receive an occurrence. *Gorrell Dep.* at p. 80:4-8. Vacation requests require 24-hours' notice and are approved based upon the order of requests received and the facility's needs. Id. at p. 81:7-10. Once an employee completes the 90-day probation period, they are then subject to a progressive discipline policy for attendance. *Bowie Dep.* at p. 105:16-17.

Upon Figlar's rehire in May 2022, she had access to 40 hours of vacation time. *Gorrell Dep.* at 77:20-22. However, Plaintiff soon had attendance issues, in part, because her son was sick. *Figlar Dep.* at p. 55:2-10. On May 18, 2022, Plaintiff left work early because her son was being transferred to Ruby Memorial

10

Hospital. ECF No. 71-2 at p. 89. She attempted to put in for vacation time but was unsuccessful. Id. Plaintiff's supervisor, Rebecca Luther, directed Figlar to contact the Human Resources Department and also informed Gorrell of the situation. Id.; *Gorrell Dep.* at p. 52:17-23. Gorrell tried contacting Figlar on May 23, 2022, to discuss options, such as applying for leave through Voya, but she could not get ahold of Plaintiff. Id. Plaintiff called off through the call-off line for three days due to her son's hospitalization. *Gorrell Dep.* at p. 53:14-15. Each call-off was an occurrence. Id. at p. 54:3-5.

In July 2022, Figlar called off again to extend a vacation. ECF No. *Figlar Dep.* at p. 66:21-24.[3] Plaintiff was subsequently terminated on July 8, 2022, due to her attendance and fourth occurrence while in the probationary period. *Bowie Dep.* at p. 105:2-5; *Gorrell Dep.* at p. 7:19-22; ECF No. 71-2 at p. 130.

### III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court

---

[3] There is a dispute as to whether Plaintiff's entire July 2022 vacation was not approved, or just one additional day of vacation. See ECF No. 71-2 at p. 66:20-67:6, 68:1-14. However, this dispute is not material because even one additional call off would have constituted a fourth occurrence.

of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18.

Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

**IV.  DISCUSSION**

As an initial matter, the Court finds that Plaintiff's claims in Count I and Count II are duplicative. "Claims are duplicative if they 'stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available.'" Massinissa Belkadi v. C.C. Mayle, No. 1:24-CV-14, 2025 WL 715349, at *4 (N.D.W. Va. Mar. 5, 2025) (quoting Doe v.

Cmty. Coll. of Balt. Cnty., 595 F. Supp. 3d 392, 417 (D. Md. 2022)). Furthermore, a "district court 'has discretion to dismiss duplicative claims where they allege the same facts and the same injury'" in the interest of judicial economy. Id.

Here, Plaintiff alleges one count of pregnancy discrimination and one count of failure to provide accommodation – both in violation of the PWFA. See ECF No. 1-1. Importantly, the failure to provide a reasonable accommodation is the only type of discrimination protected under the PWFA. "The plain language of the statute shows that it only applies to an employer's refusal to provide reasonable accommodations for pregnancy-related conditions." Hunter v. Otis Elevator Co., No. 2:16-CV-04018, 2018 WL 1023107, at *6 (S.D.W. Va. Feb. 21, 2018). Here, whether Plaintiff describes the claim as pregnancy discrimination or the failure to provide a pregnancy-related accommodation, the claims stem from the same allegations, are assessed under the same legal standards, and would afford Plaintiff identical relief. Thus, the claims are duplicative, and the Court will consider Counts I and II together.

### A. Plaintiff's Claim for Nondiscrimination with Regard to Reasonable Accommodations Related to Pregnancy Fails Because Plaintiff Did Not Submit A Request or Accommodation or the Documentation Required by Simonton and the PWFA.

Defendant's Motion for Summary Judgment is **GRANTED** because the undisputed facts show Plaintiff cannot prove a claim under the

PWFA. "In 2014, the West Virginia Legislature codified the protections afforded to pregnant employees with the adoption of the Pregnant Workers' Fairness Act ("PWFA") . . .which explicitly requires employers to reasonably accommodate their employees' 'known limitations related to pregnancy, childbirth, or related medical conditions.'" Larry v. Marion Cnty. Coal Co., 302 F. Supp. 3d 763, 769 (N.D.W. Va. 2018). The PWFA provides in pertinent part that it is unlawful for an employer to:

> (1)  Not make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a job applicant or employee, following delivery by the applicant or employee of written documentation from the applicant's or employee's health care provider that specifies the applicant's or employee's limitations and suggesting what accommodations would address those limitations, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity;
>
> . . .
>
> (3)  Require a job applicant or employee affected by pregnancy, childbirth, or related medical conditions to accept an accommodation that such applicant or employee chooses not to accept; or
>
> (4)  Require an employee to take leave under any leave law or policy of the covered entity if another reasonable accommodation can be provided to the known limitations related to the

14

> pregnancy, childbirth, or related
> medical conditions of an employee.

W. Va. Code § 16B-19-2. The terms "reasonable accommodation" and "undue hardship" are further defined or exemplified by regulation. See W. Va. Code R. 77-10-2. For example, a reasonable accommodation for a pregnant employee could include "[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position . . . and other similar accommodations for individuals with disabilities." Id. at § 77-10-2.3.2.

Further, within the PWFA, "undue hardship" is defined as "an action requiring significant difficulty or expense, when considered in light of the factors" outlined by regulatory language. Id. at § 77-10-2.2. To determine whether an accommodation would impose an undue hardship, courts should consider factors including:

> 2.2.1.a. The nature and cost of the accommodation needed under this article;
>
> 2.2.1.b. The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
>
> 2.2.1.c. The overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

> 2.2.1.d. The type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

Id. at § 77-10-2.2.1.a-d.

"The PWFA provides that the procedures and remedies regarding unlawful employment practices in violation of the Act are the same as those for the [West Virginia Human Rights Act]." Larry v. Marion Cnty. Coal Co., 302 F. Supp. 3d 763, 769 (N.D.W. Va. 2018). Further, "[t]he plain language of the statute shows that it only applies to an employer's refusal to provide reasonable accommodations for pregnancy-related conditions." Hunter v. Otis Elevator Co., No. 2:16-CV-04018, 2018 WL 1023107, at *6 (S.D.W. Va. Feb. 21, 2018).

Here, Figlar's claim fails as a matter of law because the undisputed facts show she did not deliver "written documentation from [her] health care provider that specifie[d] [her] limitations and suggesting what accommodations would address those limitations." W. Va. Code § 16B-19-2(1). Plaintiff argues that she provided medical documentation to support an accommodation under the PWFA. ECF No. 93 at pp. 6-7. In contrast, Simonton asserts Plaintiff never made an accommodation request to Voya, and further did not submit the necessary paperwork and medical documentation

16

for Simonton and Voya to process such a request. ECF No. 95 at pp. 6-7.

Plaintiff's argument fails for two reasons. First, the one-sentence note signed by LPN Gordon does not qualify as a request for accommodation because the note did not provide mandated work restrictions or recommended accommodations – as required by the PWFA. To qualify as a request for accommodation, medical documentation must specifically state that an accommodation is necessary or required. Smith v. CSRA, 12 F.4th 396, 415 (4th Cir. 2021) (denying a request for remote work because the employee's doctor did not specifically state that such an accommodation was required). Importantly, the medical note stated it was "recommended that Linda lift no more than 30lbs at this time." ECF No. 73-3. The note does not describe the weight restriction as "a medical necessity for her to continue working." See Nguyen v. Bessent, No. 23-1220, 2025 WL 502073, at *6 (4th Cir. Feb. 14, 2025) (noting that although Nguyen's medical documentation referenced transfer to a new division, it didn't describe transfer as a medical necessity for her to continue working.") Rather, it was a recommendation. Furthermore, the note did not provide a timeline for any such lift restriction or provide suggestions on how Simonton could accommodate Plaintiff.

The Court also notes that based upon the record before it, it appears that LPN Gordon wrote the note without having met with or

examined Figlar. Rather, Gordon wrote the note based upon Figlar's claim that she lifted up-to 200 pounds and worked 12-hour shifts. ECF No. 93-7. Further, Plaintiff's discharge paperwork from the Emergency Department visit, where she found out she was pregnant, does not include any discussion of needed work restrictions. ECF No. 73-1. Rather, the emergency doctor simply referred her to an OB/GYN because she was pregnant. Id. Thus, the medical note [ECF No. 73-3] from July 8, 2021 is alone insufficient to qualify as a request for medical accommodation under the PWFA.

Second, Plaintiff's claim for failure to accommodate also fails because she did not complete the necessary medical certification and request accommodation through Voya. "[A]n employer can require that a plaintiff/employee provide current medical documentation about the employee's disability." Oakley v. Dejoy, No. 5:23-CV-42-FL, 2024 WL 1286205, at *6 (E.D.N.C. Mar. 26, 2024). "When an employee claims that [s]he requires a special accommodation due to an illness or disability, the employer may require that the employee furnish medical documentation demonstrating that the accommodation is required." Katz v. Garland, No. 1:20-CV-554, 2023 WL 11990807, at *7 (E.D. Va. Mar. 16, 2023), aff'd, No. 23-1528, 2024 WL 399099 (4th Cir. Feb. 2, 2024), cert. denied, 145 S. Ct. 378, 220 L. Ed. 2d 142 (2024) (finding plaintiff failed to provide documentation requested by the employer, causing a breakdown in the interactive process and

18

thereby precluding the employer's liability).[4] Here, Simonton's Human Resources Department directed Plaintiff to contact Voya to apply for any needed leave or accommodation related to her pregnancy. The undisputed facts show that Plaintiff made contact with Voya and that medical paperwork was sent to her healthcare provider for medical certification. However, there is no evidence of such paperwork being completed and submitted. Shelia Bowie and Kellie Gorrell's testimony make clear that Voya was responsible for managing requests for leave and accommodation. Unless and until Plaintiff or her medical provider submitted the necessary medical certification, no further progress could be made in accommodating Plaintiff. Thus, Simonton did not fail to accommodate Figlar's pregnancy because Figlar did not complete the request for accommodation process.

---

[4] "The PWFA provides that the procedures and remedies regarding unlawful employment practices in violation of the Act are the same as those for the [West Virginia Human Rights Act]." Larry v. Marion Cnty. Coal Co., 302 F. Supp. 3d 763, 769 (N.D.W. Va. 2018). Discrimination claims brought under the West Virginia Human Rights Act are governed by the burden-shifting framework of Title VII of the Civil Rights Act of 1964, as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973). Furthermore, "[b]ecause the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases." Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001). Thus, it is appropriate to apply the same analytical framework when assessing claims under the PWFA because the procedures and remedies are the same and cases analyzing disability or gender discrimination are relevant to assessing pregnancy discrimination claims.

Plaintiff also asserts there is evidence before the Court to support that Plaintiff or her medical provider submitted the completed medical certification form to Voya. Id. at p. 12. Defendant and the Court disagree with Plaintiff's position. Plaintiff's speculation that the form could have been completed and was somehow lost in transmission has no factual basis. The Voya paperwork, in bolding lettering, directs it to be faxed to Voya Absence Resources. Plaintiff offers no evidence from LPN Gordon that the paperwork was completed; the last communication from Gordon in the record only states that Voya sent the OB/GYN office the forms. ECF No. 73-7. There is no reason to suspect or question that the paperwork would have mistakenly been sent to Simonton. Rather, the undisputed facts and Plaintiff's own testimony support that Figlar never saw or received a copy of the completed medical certification.

Plaintiff's medical file is devoid of any reference to the completed paperwork. Rule 56 places a particular burden upon a party resisting a summary judgment challenge. "A party asserting that a fact . . . is genuinely disputed must support the assertion by **citing to particular parts of materials in the record . . .**" Fed. R. Civ. P. 56(c)(1)(A); see also United States v. Prince, No. 1:08CV1244, 2011 WL 13092084, at *4 (E.D. Va. June 13, 2011) ("To the contrary, it is well established that at summary judgment stage, parties have the burden of citing specific evidence in the

record that creates a genuine issue of fact for trial."); <u>United States v. 5443 Suffield Terrace, Skokie, Ill.</u>, 607 F.3d 504, 510-11 (7th Cir. 2010) ("At summary judgment, . . . saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact . . ."). Thus, Plaintiff's efforts to create a question of fact for the jury are unsuccessful and unsupported by the record.

Accordingly, Plaintiff's Complaint fails as a matter of law and Defendant is entitled to summary judgment because Plaintiff did not provide adequate written documentation specifying her limitations and suggesting accommodations as required by the PWFA and Plaintiff did not comply with Simonton's process for requesting an accommodation. The Court need not reach whether such accommodation would have constituted an undue hardship upon Simonton because Plaintiff failed to establish her prima facie case.

## V.   <u>CONCLUSION</u>

For the reasons stated herein, *Defendant Simonton Windows & Doors, Inc.'s Motion for Summary Judgment* [ECF No. 71] is **GRANTED**. Plaintiff's Complaint [ECF No. 1-1] is **DISMISSED WITH PREJUDICE**. Plaintiff's *Motion for Reconsideration and Integrated Memorandum of Law* [ECF No. 91] is **DENIED AS MOOT**.

All other pending motions, hearings, and deadlines in this matter are hereby **TERMINATED**. This action is thus **STRICKEN** from the Court's active docket and the Clerk is **DIRECTED** to enter judgment in favor of Simonton Windows & Doors, Inc.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:**  March 27, 2025

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA